GIRARD POINT STORAGE CO. v. ROY.

(Circuit Court of Appeals, Third Circuit. February 28, 1899.)

No. 19, September Term.

WHARF—LIABILITY OF OWNER—NEGLIGENCE.

    A wharf constructed in 1865 was from time to time thereafter repaired, and in the fall of 1893 some of the old posts were replaced, and all the new posts and those that were reset were fastened and braced in the wharf. The evidence was uncontradicted that the wharf, as repaired, including the mooring posts, was considered by wharf builders staunch and strong. After a storm of unusual violence had prevailed for several days, the river on which the wharf was situated became much swollen, and its current very rapid. Two ships moored side by side at the wharf broke adrift, by the pulling out, under the stress of the wind and tide, of mooring posts to which they were fastened, and struck a ship as she lay moored in the river, causing the damage sued for. *Held*, that the owners of the wharf were not negligent nor liable for the injuries received.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

John Hampton Barnes and Geo. Tucker Bispham, for appellant. John F. Lewis, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. This is an appeal from a decree against the Girard Point Storage Company on account of alleged negligence in the maintenance and management of a wharf, result-

ing in damage to the ship "Norwood." 79 Fed. 113. At the time of the collision hereinafter mentioned, and for a number of years prior thereto, the appellant was the owner of a wharf on the eastern side of the Schuylkill river at Point Breeze. On the morning of Monday, May 21, 1894, the Norwood lay moored to a wharf on the western side of that river nearly opposite Point Breeze. A storm of wind and rain of unusual violence had, with some intermissions, prevailed for several days, and the river was much swollen, and its current very rapid. About nine or ten o'clock on the same morning the ships Waterloo and Glenalvon, each about 300 feet long and of nearly 1,800 tons net registry, which had been moored side by side at the appellant's wharf, went adrift by reason of the pulling out and yielding respectively, under the stress of wind and tide, of mooring posts to which they had been fastened. The Waterloo thereupon swung across the river and struck the Norwood as she lay moored, causing the damage complained of in the libel. The condition of the river and wind was not such, in our opinion, as to justify a finding that the damage resulted from an act of God; but to warrant a recovery culpable negligence on the part of the appellant must be shown by a preponderance of evidence. The fact that the posts to which the mooring lines of the Waterloo and Glenalvon were fastened failed to hold those vessels does not of itself establish such negligence. The appellant, while held to a high degree of care, was not an insurer of the sufficiency of the posts or of the bracing or other fastening of them in its wharf. Nor has the doctrine of res ipsa loquitur any application to this case. There was nothing unusual in the mooring of the Waterloo and Glenalvon side by side at the wharf. Such mooring is a common practice. A charge of negligence clearly cannot be sustained on the ground that it was permitted or occurred on the occasion in question. The crucial inquiry is whether the appellant was guilty of negligence in permitting, under the circumstances, its wharf to be used for mooring purposes by the Waterloo and Glenalvon, lying side by side, the mooring posts not being so firmly fastened in the wharf as to withstand the strain of the mooring lines. It does not appear that any of the posts were broken by such strain, but that some were pulled wholly out of the wharf, and others were partially pulled out and so yielded to the strain as to incline toward the river and allow the lines to drag and slide over their ends. In determining the existence or nonexistence of negligence on the part of the appellant the test to be applied is, not whether the pulling out and yielding of the mooring posts could have been avoided if the appellant had anticipated such an occurrence, but whether, under the circumstances disclosed in the case, it failed to exercise reasonable precaution in not anticipating and providing against that occurrence. Applying this test, was the appellant guilty of negligence? Its wharf was originally constructed in 1865, and from time to time thereafter was enlarged, renewed and repaired by wharf builders who, it was reasonable for the appellant to assume, understood their business. It does not appear that at any time before the storm of May, 1894, any mooring posts in the

appellant's wharf had been pulled out or had yielded through the tension of mooring lines. The evidence fails to disclose anything which could reasonably have caused the appellant prior to the accident to anticipate such an occurrence. The wharf had been extensively repaired in October and November, 1893. In addition to other work, some of the old posts were replaced with new ones, and others were re-set, and all the new posts and those which were reset were fastened and braced in the wharf. The wharf builders were instructed by the appellant's superintendent to do all that was necessary to make the wharf strong and sufficient for the purposes for which it was used. There is uncontradicted evidence of the most positive and satisfactory character that the wharf as so repaired, including the mooring posts, was considered by wharf builders constructed in the most approved manner, staunch and strong, and to compare not unfavorably with other wharves at which large vessels were accustomed to moor. The evidence on the part of the libelant as to the condition of the wharf is based upon its appearance after the accident, and is loose and unsatisfactory. It appears that during the storm and prior to the day of the collision two of the mooring posts were pulled out under the upward strain of the mooring lines. We think it may safely be assumed that it was impracticable then and before the time of the accident to replace those posts and re-set and brace the others. The fact that longer posts were subsequently placed in the wharf is immaterial on the question of negligence. We are satisfied under the evidence adduced that the libel should have been dismissed with costs.

The decree below is reversed.