R. M. RIDDICK v. JOE DUNN.

(Filed 11 September, 1907).

**Carriers—Terminal Charges—Wharfage.**

A general custom or usage in regard to terminal charges, in addition to the charges for carriage, is a part of the contract of carriage which the law reads into it. Therefore, in the absence of an express stipulation to the contrary, a wharfinger may re-·cover of the consignee reasonable wharfage charges established by general custom or usage, and thus recognized and acquiesced in at the port of delivery.

CIVIL ACTION, heard upon a case agreed by *W. R. Allen, J.*, at March Term, 1907, of GATES Superior Court.

The plaintiff brought suit to recover the amount of wharfage charges upon goods shipped on a vessel of the Albemarle Steam Navigation Company from Franklin, Virginia, to Gatesville, in this State. He was lessee individually of a wharf at the latter town, which was the usual and only place for the delivery of goods from the boats of the said company, plaintiff being its agent at Gatesville. It was admitted that the charge for wharfage was the customary one, and also reasonable, and that such charges have always been made and paid by the owners of goods delivered from the company's steamers on the wharf. The defendant had received goods himself and paid the wharfage charges, but notified the plaintiff that he would not do so in the future, and not to receive any more of his goods on the wharf. The plaintiff insisted on their payment,· and the defendant has since received goods from the wharf and paid the charges thereon, though at the time he refused to pay the charges now claimed, or any others thereafter. The goods on which the charges now sued for were made have been delivered to and received by him from the plaintiff's wharf. The published rates of the navigation company contained no reference to a charge for wharfage.

Upon the case agreed the Judge decided with the plaintiff, and from the judgment the defendant appealed.

*L. L. Smith* for plaintiff.
*W. M. Bond* and *A. Pilston Godwin* for defendant.

WALKER, J., after stating the case: We do not see why the defendant is not liable for the sum demanded. The plaintiff was a wharfinger and dealt with his patrons according to a general custom or usage which had been recognized and acquiesced in by all of the consignees, including the defendant, at the port of Gatesville, whose goods were carried by the ships of the navigation company, namely, that the charges for wharfage should be paid to the plaintiff by them. The bill of lading was not made a part of the case agreed, and, as we are not permitted here to presume anything against the correctness of the Court's ruling, it must be assumed that there is nothing therein inconsistent with the custom or usage as to the party liable for wharfage charges. Indeed, it is stated in the case that there is no reference to such charges in the company's tariff of rates, which would seem to imply that the latter were made with reference to the local custom at Gatesville, and that the rates of transportation were lower than they would have been if the company had undertaken to pay the terminal charges for wharfage. We cannot infer that carriers will voluntarily and gratuitously pay wharfage charges, which in some cases may be as much as the freight on the goods. That is not their custom, we believe, and, as they are entitled to charge for the entire service rendered, including any expenditures for terminal facilities, provided they are reasonable, we must take it that the company did not intend that the freight charges should cover any amount to be paid to the plaintiff for wharfage, for there is no evidence that this is so; and the custom which is admitted to have existed at Gatesville would tend to show that it is not true,

but that, on the contrary, the parties—consignor, consignee and carrier—were all dealing with each other in view of the custom, and expected to be governed thereby. If the carrier agreed to pay the wharfage, or all terminal charges, either in the bill of lading or otherwise, it was easy to have inserted the fact in the case agreed, or to have proved it, if the parties could not have agreed in respect to it. In the absence of any more definite statement of the facts, we must hold that the parties contracted with reference to the custom and are bound by it, the same as if it had been expressly stated in their agreement. *Miller v. Telherington,* 6 H. & N. (Exch.), 278. That case decides that, when a custom is well known to exist, the parties must be considered to have contracted with reference to it, so as to import its terms into their agreement, or to require that the latter should be interpreted by it. *Brown v. Byrnie,* 3 El. & B. (77 E. C. L.), 703, is perhaps more to the point, it bearing a closer resemblance to our case in its facts and the precise question presented. See, also, *Buckle v. Knoop,* L. R., 2 Exch., 125; *Wigglesworth v. Dallison,* 2 Smith's L. Cases (Ed. 1888), 842, and especially the notes at p. 853; and, as bearing somewhat on the question, *Vaughan v. Railroad,* 63 N. C., 11; *Norris v. Fowler,* 87 N. C., 9; 9 Cyc., 582.

Wharfage is a mere charge made by the owner of the soil or shore for the use of a portion of it, which charge he has a right to make. The price, perhaps, may be subject to municipal regulation, but the right to charge is undoubted. *O'Conley v. Natchez,* 9 Miss. (1 Sm. & M.), 31; *Cannon v. New Orleans,* 20 Wall., 577. Right to compensation for the use of a wharf may be claimed upon an express or implied contract, according to the circumstances. If the price has not been agreed upon, the proprietor recovers what is just and reasonable for the use of his property and the benefit conferred, as in other like cases. 1 Farnham on Waters, 570.

A riparian owner had at common law a qualified interest in the water frontage belonging by nature to his land, and, consequently, the right to construct thereon wharves, piers or landings, as far as deep water, subject, however, to certain restrictions in their construction and use imposed by statute (Revisal, sec. 1696), one of which is, that navigation must not be obstructed. *Bond v. Wool,* 107 N. C., 139. This originated the right to compensation for wharfage or for the use of the wharf, pier or landing. *Lord Mansfield* said: "Everybody that pays has a benefit, for if they go to the wharf they have the benefit of it, and if they land their goods elsewhere within the manor, they land upon the plaintiff's property." *Colton v. Smith,* 1 Cowper, 47. In the case of *Fitzsimmons v. Milner,* 32 S. C. (2 Rich.), 370, it was held that, though it was shown to be customary for the factor to pay the wharfage charges for goods shipped to his consignee, yet the latter is also liable as owner, if the former failed to pay them, because of his right of property and the benefit received from the care of the goods and the use of the wharf. It is also said in that case: "That it is the rule of law, as well as the custom, for the consignee to pay the wharfinger, may, we think, be gathered from the cases." Whether that be so or not, we conclude that, upon the facts agreed, the plaintiff has derived a benefit, as far as appears, from the use of the wharf, and, upon a well-settled principle, should pay its reasonable value, which is admitted in the case to be the amount claimed, though the precise nature of the use is not disclosed. This Court has recognized the right of a wharfinger to charge the owner of goods for the use of his wharf. *Wooster v. Blossom,* 50 N. C., 244.

It does not appear distinctly whether the charge against the defendant was for dockage or berthage, strictly speaking, or for wharfage, using the former terms in the sense of a charge against a vessel for the privilege of mooring to a wharf or pier, which is one of the usual and customary port charges

against the vessel, and the latter as denoting a charge against merchandise for the use of a wharf, which is said to be one of its meanings. 30 Am. and Eng. Enc. (2d Ed.), 497; *People v. Roberts,* 92 California, 659; *The Wharf Case,* 3 Bland, 373; *Rodgers v. Stophel,* 32 Pa. St., 111. We infer from all the facts and circumstances that the charge in this case was of the latter kind.

We have not discussed the question as to the liability of the carrier, upon general principles, for wharfage charges, because we think the parties must·be considered as having dealt with each other upon the basis of the established custom, and the freight rates may have been, and no doubt were, calculated and fixed with reference thereto. The defendant may not be paying more than he would be required to pay if the company had agreed to pay or should be held liable for all terminal charges, as it would in all probability increase its rates by the amount so expended for that purpose; and this, as we have said, it would have a right to do, if the rates for the whole service are reasonable, under all the circumstances, for they cannot exceed what is a fair return for the capital invested.

We have not overlooked the fact that the defendant never informed the navigation company of his intention not to be bound by the established custom at the port of Gatesville. The contract was between him and that company as the carrier, and the latter had every reason to suppose that the defendant was willing to abide by the custom in the carriage of the particular goods, for the care of which the charge was made by the plaintiff. This gave the carrier the right to unload the goods on the wharf, which was the usual place of deposit, instead of delivering them out of the ship or at its side.

The ruling of the Court upon the facts was correct.

Judgment Affirmed.