## THE SANTA BARBARA.

### CANTON CO. OF BALTIMORE et al. v. BROWN.

(Circuit Court of Appeals, Fourth Circuit. May 6, 1924.)

No. 2173.

1. **Railroads ☞256—Corporation owning stock operating railroad responsible for negligence of railroad corporation.**

 A corporation, which owned and operated a concrete pier, and which operated a railroad extending along pier and owned all stock of railroad corporation holding title to the railroad tracks, and constituting a mere instrumentality of the first corporation, was responsible for negligence of railroad corporation.

2. **Wharves ☞20(7)—Evidence held to sustain finding as to cause of fire injuring vessel at dock.**

 Evidence *held* to sustain finding that fire which destroyed warehouse on pier and injured vessel at dock was caused by negligence of defendant in sweeping from cars inflammable refuse ignited by spark from engine.

3. **Wharves ☞20(1)—Operation of switch engine over track on which inflammable waste had accumulated held negligence.**

 Operation of switch engine back and forth over track where inflammable refuse had been permitted to accumulate at a time when nitrate of soda was being loaded on cars *held* negligence, especially in view of failure to provide adequate watch and fire apparatus.

4. **Wharves ☞20(7)—Evidence held insufficient to prove contributory negligence of agents of ship owner in failure to put out fire.**

 In libel for injuries to ship from fire set on defendant's pier, while ship was at dock, evidence *held* insufficient to prove contributory negligence of stevedores and agents of ship owner in failing to make effort to put out fire.

5. **Wharves ☞20(1)—Ship held not licensee during fumigation, after discharge of cargo.**

 Ship, which had completed business of unloading and remained at dock for purpose of fumigation, was not merely a licensee to which owner of pier owed no duty, except to refrain from injuring ship willfully or wantonly, though pier owner did not charge wharfage during time of fumigation, since agreement by owner of vessel to pay reasonable compensation in consideration for use of wharf will be implied.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

·6. Wharves ⊚⊃⊃16—Agreement by owners of vessel to pay reasonable compensation for use of wharf implied by contract.

In the absence of a contract not to charge wharfage, the law implies an agreement by the owner of the vessel with the wharfinger to pay reasonable compensation in consideration of the use of the wharf.

7. Negligence ⊚⊃⊃66(1)—Person knowing dangerous condition cannot recover.

Generally one who uses or enters on the property of another with full knowledge of its dangerous condition cannot recover for injuries to his person or property arising from the known danger.

·8. Wharves ⊚⊃⊃20(5)—Ship owner, without knowledge that pier owner had taken no precaution to extinguish fires, not precluded by knowledge of dangerous condition from recovering for injuries to ship from fire.

Ship owner's knowledge that pier owner had permitted inflammable refuse to remain on track over which switch engine was running would not preclude recovery for injuries to ship from fire, in absence of evidence that ship owner knew that pier owner had not taken precaution by providing watchman and fire apparatus to guard against danger.

Appeal from the District Court of the United States for the District ·of Maryland, at Baltimore; Morris A. Soper, Judge. '

Libel in admiralty by Andrew B. Brown, as master of the steamship Santa Barbara, against the Canton Company of Baltimore and another. Decree for libelant, and respondents appeal. Affirmed.

See, also, 299 Fed. 152.

Robert E. Lee Marshall, of Baltimore, Md. (Brown, Marshall, Brune & Parker, of Baltimore, Md., on the brief), for appellants.

Joel W. Massie and Stuart S. Janney, both of Baltimore, Md. (Barry, Wainwright, Thacher & Symmers, of New York City, Janney, Ober, Slingluff & Williams, of Baltimore, Md., James K. Symmers, of New York City, and Frank B. Ober, of Baltimore, Md., on ·the brief), for appellee.

Before WOODS and ROSE, Circuit Judges, and WATKINS, District Judge.

WOODS, Circuit Judge. Canton Company of Baltimore owns and ·operates a concrete pier, known as Pier No. 8, extending south about 1,000 feet into the harbor. The warehouse on the pier was a wooden building, about 500 feet long, 18 feet high, and 100 feet wide. On the east side of the pier is a dock for vessels receiving and discharging cargo. A double line of railroad track, used to convey freight to and from ships, extends along the entire length of the pier on the west ·side. The space between the wall of the warehouse and the nearer railroad track was used as a platform on which freight was handled. Eleven doors placed at regular intervals on the west side furnished ·communication between the warehouse and the platform, and like doors ·on the east side furnished communication between the platform and the vessels. Canton Railroad Company, a terminal and switching corporation, has title to the railroad tracks, but Canton Company owns all the railroad company stock and operates the railroad.

On Friday, May 5, 1922, the steamship Santa Barbara, 9,400 tons dead weight, belonging to W. R. Grace & Co., and consigned to Cottman Company as agent, docked at Pier 8 and began to unload its cargo

of 1,800 tons of nitrate of soda. She finished unloading at 5 p. m., Sunday, May 7, 1922, but remained at the dock for fumigation by the quarantine officer. The fumigation began at 11 a. m. on Monday, May 8. While it was in process, the warehouse was destroyed, and the vessel injured by fire. The master of the Santa Barbara filed this libel, alleging that the fire and consequent injury to the ship was caused by the negligence of Canton Company and Canton Railroad Company. Upon testimony taken in court the District Judge held the allegations of the libel to be sustained, and made a decree in favor of the libelant for $13,276.78.

[1] Since Canton Railroad Company is a mere instrumentality of Canton Company, controlled and operated and all its stock owned by Canton Company, any act of negligence of the railroad company must be ascribed to Canton Company. United States v. Delaware, Lackawanna & Western R. Co., 238 U. S. 516, 35 Sup. Ct. 873, 59 L. Ed. 1438; The Willem Van Driel, Sr., v. Pennsylvania R. Co. (4th Circuit) 252 Fed. 35, 164 C. C. A. 147.

[2] The evidence hardly leaves room to doubt the correctness of the findings of the District Court that the fire originated on the railroad track. The stevedores, who were engaged in loading nitrate on the cars, testified that before the warehouse caught they saw refuse, which had been swept out of the cars, burning on the track immediately after a switch engine had passed. It is true that witnesses on behalf of respondent testified that when they arrived the warehouse was burning and they saw no fire on the track; but this is not sufficient to overcome the affirmative testimony of witnesses that they saw fire on the track before the warehouse caught. It may well be that the refuse burning on the track at the time had been consumed, or that the attention of persons who came after the warehouse caught was so absorbed in the great conflagration that they did not observe the smaller fire on the track. Besides, sparks from the passing of the engine over inflammable refuse swept from the cars on the tracks furnishes a probable cause of the fire. The evidence was that, although the engine was in good order and supplied with a spark arrester, it did sometimes drop sparks. On the other hand, the evidence suggested no cause for a fire originating in the warehouse.

[3] Equally well supported is the finding of the District Court that the fire was caused by negligence in the operation of the railroad. The defendants knew that the nitrate of soda which the stevedores had been taking from the ship to the pier, and which at the time of the fire they were loading on the cars, was inflammable and required careful protection from fire; yet they placed alongside of the pier uncleaned cars, from which the stevedores had to sweep paper, straw, hay, excelsior, and other waste. This inflammable material had been allowed to accumulate on the track, with the intention of sweeping it off after the cargo of the Santa Barbara had been disposed of. To run a switch engine back and forth over a track where such waste had accumulated, and that, too, while handling nitrate of soda, was highly negligent. The apparent failure to provide adequate watch and fire apparatus made the negligence all the greater.

[4] The defendant contends that the employees of Cottman Company, the stevedores and agents of the ship owner, were guilty of contributory negligence in failing to make any effort to put out the fire first seen on the tracks. Although no reference is made to this issue in the opinion of the District Court, the decree in favor of libelant for the full amount claimed implies that it was decided against respondent. Denmark, one of the negro stevedores, did testify that while on his way to the pier with six or seven others he saw a small fire on the track, and did not go to it or attempt to put it out, because he thought it was of no consequence. The recollection of this witness must have been confused, for all the other stevedores working with him, who were witnesses, testified that they were inside the warehouse when they first became aware there was fire on the track. Indeed, the testimony of Denmark seems inconsistent with the trend of the other evidence on the subject. On the whole, we do not think the defendant has sustained the burden of proof of contributory negligence by the preponderance of the evidence. In this view it is not necessary to decide whether the owner of the ship was chargeable with negligence of a stevedore in the employment of Cottman Company, agent of the ship and a stevedore corporation employed to unload it.

[5] The appellant earnestly presses the point that at the time of the fire the Santa Barbara had completed her business of unloading at the pier and remained there gratuitously, solely for the purpose of fumigation, and that therefore she was only a licensee, to which the owner of the pier did not owe the duty of due care to keep the pier in safe condition, but only the duty not to injure the ship willfully or wantonly. Under the proof, the ship was more than a mere licensee. The distinction between mere invitation and license, in the absence of an express contract, stated in Campbell on Negligence, is approved in Bennett v. Railroad Co., 102 U. S. 577, 584 (26 L. Ed. 235):

"The principle * * * appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it."

In this instance there was no express contract as to the use of the pier by the vessel after discharge of her cargo. She remained at the wharf with the knowledge and consent of Canton Company. The undisputed testimony of Pardoe, secretary of Cottman Company, was that Canton Company charged nothing for wharfage while a ship was unloading at its pier, because it was compensated in other ways, but that wharfage had been charged and paid by him on a vessel lying at Canton Company's pier after discharge of cargo.

[6] In the absence of a contract not to charge wharfage, the law implies an agreement by the owner of the vessel with the wharfinger to pay reasonable compensation in consideration of the use of the wharf.

"Compensation for wharfage may be claimed upon an express or an implied contract, according to the circumstances. Where a price is agreed upon for the use of the wharf, the contract furnishes the measure of compensation; and when the wharf is used without such an agreement, the contract is implied, and the proprietor is entitled to recover what is just and reasonable for the use of his property and the benefit conferred."

See Ex parte Easton, 95 U. S. 68, 73, 24 L. Ed. 373; Riddick v. Dunn, 145 N. C. 31, 58 S. E. 439, 13 Ann. Cas. 382, and note; Fitzsimons v. Milner, 2 Rich. (S. C.) 370.

The advantage or interest in the use of the pier by the ship was mutual—that of the ship, being a convenient place for fumigation; that of Canton Company, being the right to receive pay for the use of its pier. Evidently Canton Company could not, after the fire, rid itself of this relation existing at the time of the fire, and its liability for negligence arising from the relation, by failing to send a bill for the wharfage owed by the ship. Thus it appears that the Santa Barbara remained at the pier after the discharge of her cargo, not under a gratuitous license, but as of right, under an implied contract that the ship use the pier and pay reasonable wharfage therefor. Under such a contract relation the wharfinger owed the ship the duty of due care.

[7, 8] The general rule is that one who uses or enters upon the property of another with full knowledge of its dangerous condition cannot recover for injuries to his person or property arising from the known danger. Bennett v. Railroad Co., 102 U. S. 577, 580, 26 L. Ed. 235; District of Columbia v. Moulton, 182 U. S. 576, 21 Sup. Ct. 840, 45 L. Ed. 1237; 20 R. C. L. 108. Cottman Company, in addition to being the stevedore employed to discharge the cargo, was the agent to which the ship was consigned at the port of Baltimore. It was, therefore, the representative of the ship in all such matters as are usually attended to by ship agents. The evidence might justify the conclusion that the condition of the railroad track was known to it. Assuming this to be so, the negligence of Canton Company consisted, not only in allowing inflammable refuse to remain on the track over which a switch engine was running, but in not providing watchmen and fire apparatus appropriate to guard against the danger. There is no evidence that the ship owner or its agent knew that Canton Company had not taken this precaution to extinguish fires.

We do not think any of the assignments of error are well founded. Affirmed.