## NORFOLK TIDEWATER TERMINALS, Inc., v. WOOD TOWING CORPORATION et al.

### No. 4227.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1938.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

James S. Barron, of Norfolk, Va., for appellant.

John W. Oast, Jr., of Norfolk, Va., for appellee Wood Towing Corporation.

NORTHCOTT, Circuit Judge.

In July, 1936, libels were filed in the District Court of the United States for the Eastern District of Virginia, at Norfolk, by Geismar & Company, Incorporated, and Morris S. Hawkins and L. H. Windholz, receivers for Norfolk Southern Railroad Company, a corporation, against Wood Towing Corporation and Norfolk Tidewater Terminals, Incorporated. The receivers for N. S. R. Co. were the owners of a barge that was sunk, at a pier operated by the Terminals company, on the night of July 2–3, 1936, and Geismar & Company was the owner of the cargo on the barge. The object of the libels was to recover for damages to the barge and cargo occasioned by the sinking of the barge. The two cases were consolidated and heard together.

The Terminals company and the Towing Corporation both filed answers and the Terminals company filed a petition impleading the Towing Corporation, asking affirmative relief and a recovery over of any amount that might be recovered from it. To this petition the Towing Corporation filed an answer denying any responsibility for the accident.

A hearing was had in January, 1937, and twenty-six witnesses testified in person before the judge below. On March 3, 1937, the judge filed his findings of fact and conclusions of law and on March 10, 1937, entered an interlocutory decree holding the Terminals company solely at fault for the accident and postponed for a period of thirty (30) days the appointment of a special commissioner to ascertain the amount of damages. On May 19, 1937, the various parties having agreed as to the amount of the damages, a final decree was entered granting recovery to Geismar & Company from the Terminals company in the sum of $16,460, with interest and costs and granting recovery to the receivers of Norfolk Southern Railroad Company, in the sum of $7,408, with interest and costs. The Towing Corporation was also granted recovery from the receivers of N. S. R. Co., in the sum of $335, with interest and costs, to be paid by the receivers out of the amount recovered by them from the Terminals company. From this decree the Terminals company brought this appeal.

The Terminals company operated what is known as the Army Base Terminals in the harbor limits of the city of Norfolk, Virginia. These premises were leased from the United States Government by the Terminals company and that company had conducted on them the business of a warehouseman and wharfinger since the year 1925.

The Towing Corporation has been for years extensively engage in the towing business in Norfolk and was employed, for hire, by the Norfolk agents of Geismar & Company to carry a large number of bales of cotton linters, by water, from a warehouse in Norfolk harbor to a steamship that was expected to dock in the slip of the Terminals company. The day before the steamship was expected to dock the Towing Corporation loaded the cotton linters on three barges, one of their own and two N. S. R. barges, chartered by the Towing Corporation. One of these barges was N. S. Barge No. 18, which was under the entire dominion of the Towing Corporation.

On July 2, 1936, at about 9:30 p. m., about high tide, one of the Towing Corporation tugs arrived at the Terminals company's slip with the three loaded barges and moored them. Barge No. 18 was moored in the inside berth between the Terminals company's piers Nos. 1 and 2, on the south side of pier No. 2.

During the night the tide receded, and about one o'clock a. m., one of the watchmen employed by the Terminals company discovered that Barge No. 18 was in trouble and listing away from the pier. The Towing Corporation was at once notified and sent the tug that had delivered the barges, which had been kept under steam awaiting the arrival of the steamship. Efforts were made to rescue the barge, but to no avail. The barge capsized and dumped her cargo into the slip. The damage to the barge was caused by a pile in the fender system which

166

had been eaten off below water by worms and which projected outwardly from the pier. As the tide receded this broken pile penetrated the bottom of the barge causing her to fill and sink.

The only issue here is between the two respondents, and the only question presented on the appeal is whether the Terminals company was solely responsible for the damages caused by the accident.

The judge below found as a fact that the barge (No. 18) was properly loaded and properly moored to the pier and concluded that under the circumstances there was no negligence on the part of the Towing Corporation in not having a watchman on the barge at the time of the accident.

■ The findings of a trial judge who heard the witnesses will not be set aside unless clearly wrong. The Corapeake, 4 Cir., 55 F.2d 228, and authorities there cited. A trial court's findings in admiralty will not be disturbed in absence of manifest error. The Nichiyo Maru, 4 Cir., 89 F.2d 539. We are of the opinion that the conclusions reached by the judge below as to the facts were right.

■■ It is strongly contended on behalf of the Terminals company that the conclusion of law reached by the District Judge that the Towing Corporation was an invitee was erroneous. While it is true that no charge was made by the Terminals company for the mooring of the barges at its wharf, the evidence shows that it was customary to handle barges in this manner for the convenience of the steamships that used the Terminals company's piers and therefore such a practice was for the benefit of the Terminals company. Steamships would not use piers unless barges loaded with cargo for them were allowed to moor at the same piers.

In The Santa Barbara, 4 Cir., 299 F. 147, 150, this court in its consideration of this question said:

"The distinction between mere invitation and license, in the absence of an express contract, stated in Campbell on Negligence, is approved in Bennett v. Railroad Company, 102 U.S. 577, 584 (26 L.Ed. 235):

" 'The principle * * * appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.' "

■ Nor does the fact that no charge was made by the wharfinger constitute any defense. City of Petersburg v. Applegarth's Adm'r, 28 Grat., Va., 321, 26 Am.Rep. 357.

■ It was the duty of the Terminals company to use reasonable care to furnish a safe berth and the Towing Corporation, as invitee, had the right to presume that the berth was safe. It was early established by a decision of the Supreme Court that "although a wharfinger does not guarantee the safety of vessels coming to his wharves, he is bound to exercise reasonable diligence in ascertaining the condition of the berths thereat." Smith v. Burnett, 173 U.S. 430, 19 S.Ct. 442, 443, 43 L.Ed. 756.

See, also, The James McCue, D.C., 37 F.2d 934; Slater Fireproof Storage Co. v. Nicholson Transit Co., The Fellowcraft, 7 Cir., 47 F.2d 734.

■ The charge of negligence against the Terminals company as to conditions at its piers is strongly supported by the undisputed fact, as proven by the testimony, that that company, several months before the accident, had an engineer make a survey of the fender system at the piers and had been advised that the system was in bad repair and the moorings unsafe, yet had done nothing to remedy conditions.

■ It is also contended on behalf of the Terminals company that the fact that a similar accident had happened to another barge of the Towing Corporation at a point more than one hundred yards from where Barge No. 18 sank, and a danger sign placed at the point of the first accident by the Terminals company, put the Towing Corporation on notice as to the bad conditions existing at the pier. We do not think this contention is sound. A danger notice at one place on a long pier would seem to indicate that the remainder of the pier was safe for mooring. Certainly the fact that a broken piling had damaged a barge at one point should have caused the Terminals company to examine the entire pier and give warning as to other dangerous places, and users of the pier had the right to presume that this had been done.

■ There was no negligence proven against the Towing Corporation and it acted with diligence on being notified of the accident. The Terminals company was shown to be a wharfinger and, as such, was obligated to use ordinary care to provide a reasonably safe berth for the mooring of such vessels as it invited the public to bring

to its piers for the accommodation of steamships using them. This it did not do and its negligence in this respect was the cause of the damages to the barge and its cargo.

The trial judge aptly said: "The Norfolk Tidewater Terminals, Incorporated, is solely liable for the loss and damage sustained by both libellants, for the reason that, as the wharfinger operating the piers, it failed to use ordinary care to provide a reasonably safe berth, failed to inspect the same, in fact knew it was unsafe, and failed to warn the invitees (libellants) with respect thereto."

There was no error, and the decree is affirmed.

Affirmed.