INTERIOR WAREHOUSE COMPANY, an Oregon corporation, Libelant,

v.

THE CAPETAN YEMELOS, her engines, tackle and boilers and Argonout Trading Agency, Inc., a foreign corporation, Respondents.

Civ. No. 10113.

United States District Court
D. Oregon.

Sept. 17, 1959.

White, Sutherland & White, Portland, Or., for libelant.

Wood, Matthiessen, Wood & Tatum, Portland, Or., for claimant-respondent.

SOLOMON, Chief Judge.

Libelant, Interior Warehouse Company, seeks to recover a penalty of $100 per hour for a 92-hour period during which the Capetan Yemelos remained berthed at the libelant's dock without being prepared to receive grain.

Libelant operates a dock and grain elevator. The libel alleges that respondent Argonout Trading Agency, Inc., owner of the Capetan Yemelos, obtained permission to berth, and did berth the vessel at libelant's dock in December, 1958. Prior thereto, respondent was familiar with the terms and conditions of wharfage at the dock. Item 24 of the libelant's "Grain Tariff No. 6" provides in pertinent part:

"(a) Unless special permit is granted at the time no vessel will be permitted to berth for the purpose of loading grain until a Port Surveyor's certificate is furnished to the effect that the vessel is in condition for the continuous loading of its full booking of grain.

\* \* \*

"(c) The Irving Dock Grain Elevator reserves the right \* \* \* to require vessels to vacate or change berth whenever in the judgment of Irving Dock Grain Elevator management it is necessary \* \* \*. Should any vessel refuse to vacate its berth when ordered to do so under the above circumstances \* \* \* the vessel will be assessed a penalty of $100.00 per hour from the time of notice to vacate until berth is vacated."

The libel further alleges that at the time of docking the vessel was not prepared to receive grain and that, pursuant to the Tariff, she was ordered to vacate her berth. The vessel refused to obey the order and remained on berth for 92 hours before commencing to load.

Libelant contends, in substance, that the berthing of the vessel with knowledge of the Tariff was an implied acceptance of the terms and conditions of the Tariff and that her failure to vacate the berth when ordered was therefore a breach of contract, entitling the libelant to assess the specified penalty.

■ Respondent excepted to the libel on both jurisdictional and substantive grounds.

Respondent claims first that the cause of action attempted to be set out arises from the vessel's interference with the storage and handling of grain on the dock; that such cause of action is non-maritime in nature and therefore not subject to admiralty jurisdiction. For this position, it relies upon The Czechoslovakia Victory, D.C.S.D.N.Y.1948, 76 F.Supp. 808, and The African Moon, D.C.E.D.Pa.1948, 81 F.Supp. 848.

Neither case is in point. In the instant case, the libel is against the vessel. But in The Czechoslovakia Victory, a consignee sued a pier operator for non-delivery of merchandise which had been discharged from the vessel to the pier. The court there held that the obligation of the *pier operator* to indemnify the consignee is non-maritime, but the cited authorities show that the obligation of a *vessel* to indemnify the consignee is unquestionably maritime.

In The African Moon, the court dismissed for want of admiralty jurisdiction a libel by a shipper against the vessel for damages to goods caused by fire on the dock prior to loading. The court there found that the vessel had never come in physical contact with the goods so that the cause of action could not be said to have arisen from the operation of the vessel. However, in the instant case the vessel is the very instrumentality alleged to have caused the damage.

Respondent concedes that an action for wharfage is maritime in nature. We do not understand why an action for the breach of a wharfage contract is any less maritime. This exception is disallowed.

Respondent also excepted on the grounds that the penalty provision is unenforceable as a matter of general contract law.

■ Libelant admits that the section providing for the payment of $100 an hour for failure to vacate a berth when requested is "in the nature of a penalty * * * to get action in the interest of efficient loading by many vessels in a congested harbor."

Professor Williston defines an unenforceable penalty as

"* * * a sum named which is disproportionate to the damages which could have been anticipated from breach of the contract, and which is agreed upon in order to enforce performance of the main purpose of the contract by the compulsion of this very disproportion." 3 Williston, Contracts, § 776 (Rev. Ed.1936).

See, e. g. Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32; Steffen v. United States, 6 Cir., 1954, 213 F.2d 266.

■ The penalty provision of the Tariff is unenforceable. However, in our view this exception must be disallowed because the libel alleges sufficient facts on which to predicate a recovery for reasonable value based either upon contract or quasi-contract. The Santa Barbara, 4 Cir., 1924, 299 F. 147.