**MEDOMSLEY STEAM SHIPPING COMPANY, Libellant,**

v.

**ELIZABETH RIVER TERMINALS, INC., Respondent.**

No. 8286.

United States District Court
E. D. Virginia,
Norfolk Division.

Oct. 4, 1962.

Vandeventer, Black, Meredith & Martin, Norfolk, Va., for libellant.

Williams, Cocke, Worrell & Kelly, Norfolk, Va., for respondent.

WALTER E. HOFFMAN, Chief Judge.

Libellant's vessel was moored at respondent's pier on September 12, 1960, and broke away from said pier when the bollard securing the vessel's forward insurance wire parted due allegedly to the condition of respondent's pier and the improperly secured bollard. Strong winds caused the remaining lines to part by reason of the excessive strain resulting from the respondent's bollard giving away. The vessel thereafter struck a bridge owned and operated by the Commonwealth of Virginia. When demand was made upon the shipowner for the damage to the bridge, the respondent was notified and called upon to indemnify the shipowner. Respondent declined and thereafter the claim of the bridge owner against the shipowner was settled for $7500.00. Libellant incurred attorney's fees and expenses in the sum of $2,326.73. Suit was instituted for $9,826.73.

The present action alleges no negligence on the part of the respondent-wharfinger. The gist of the action lies in the following allegation:

"That respondent impliedly warranted to libellant that the said pier and bollard were properly constructed and in good condition when tendered to libellant, and that said pier and bollard were fit for the purpose for which offered."

Thus, for reasons that may be apparent to those who are familiar with the classical indemnity cases involving shipowners and stevedores including the right of indemnification for attorney's fees and expenses, libellant grounds its action on the implied warranty theory. Respondent, while conceding that an action may be maintained sounding in negligence, has filed exceptions to the libel.

With candor libellant concedes that the general rule of law as to a wharfinger's duty sounds in tort. City Compress, etc. v. United States, 4 Cir., 190 F.2d 699; Smith Scow Corp. v. Consolidated Iron & Metal Works, 2 Cir., 275 F.2d 367; M. & J. Tracy, Inc. v. Marks, etc. & Son, 2 Cir., 283 F. 100. As stated in Benedict on Admiralty, Vol. 1, § 101:

"A wharfinger is one who keeps a wharf for the purpose of receiving goods for hire. He does not guarantee the safety of vessels coming to his wharf but is bound to exercise reasonable diligence to ascertain the condition of his berths, and if there is any dangerous obstruction, to remove it or give notice of its existence to vessels about to berth at the wharf."

All of the decided cases speak only of a duty to provide reasonably safe premises. 56 Am.Jur., "Wharves", § 39; 94 C.J.S. Wharves § 18.

Libellant seeks comfort in Smith v. Burnett, 173 U.S. 430, 19 S.Ct. 442, 43 L.Ed. 756. The ship, while tied to the wharf, was seriously damaged by a large rock in the river beneath the berth of the vessel. The action was based upon negligence of the wharfinger in not removing the rock or in not notifying the shipowner of the presence of this obstruction. The court said:

"Although a wharfinger does not guarantee the safety of vessels coming to his wharves, he is bound to

exercise reasonable diligence in ascertaining the condition of the berths thereat, and if there is any dangerous obstruction to remove it, or to give due notice of its existence to vessels about to use the berths. At the same time the master is bound to use ordinary care, and cannot carelessly run into danger."

The United States Supreme Court in Smith v. Burnett, supra, cited with approval the English case, The Moorcock, 13 P.D. 157, wherein the vessel was damaged due to the uneven condition of the river bed adjoining the pier. An examination of this case discloses the following:

"* * * It was held that, though there was no warranty, and no express representation, there was an implied undertaking by defendants that they had taken reasonable care to ascertain that the bottom of the river at the jetty was not in a condition to cause danger to the vessel * * *."

The recent cases of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, as well as other authorities touching upon the warranty of seaworthiness and the warranty of workmanlike service fall within a special category and do not justify an extension of the warranty doctrine to encompass the wharfinger's possible liability. As stated in Crumady:

"* * * The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel whether the vessel's owners are parties to the contract or not. That is enough to bring the vessel into the zone of modern law that recognizes rights in third-party beneficiaries. * * * 'competency and safety of stowage are inescapable elements of the service undertaken.' * * * They are part of the stevedore's

'warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product.' "

 The duty of a wharfinger, as stated in Smith v. Burnett, supra, is the law of this circuit. Reasonable care to furnish a safe berth is required and the invitee has the right to presume that the berth was safe. Norfolk Tidewater Terminals, Inc. v. Wood Towing Corp., 4 Cir., 94 F.2d 164.` See also, Girard Point Storage Co. v. Roy, 3 Cir., 93 F. 574.

Being reluctant to extend the doctrine of implied warranty to include the obligations of a wharfinger, the exceptions to the libel will be sustained with the right of the libellant to amend within twenty (20) days.

Present order.